IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39080-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL TODD FOREST, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Michael Forest appeals his conviction for attempting to obtain a

controlled substance by a forged prescription. He contends his trial attorney performed

ineffectively when failing to request a jury instruction defining the word "attempt" and a

voluntary intoxication instruction. We conclude Forest was not entitled to either

instruction and thus his counsel did not perform ineffectively. We affirm his conviction.

FACTS

Michael Forest entered a Cle Elum pharmacy and handed a prescription for

codeine-promethazine to pharmacy technician Damian Fudcaz. Codeine-promethazine is

a controlled substance. Forest told Fudcaz that the individual named on the prescription, Brooke Forest, was his brother.

Damian Fudcaz noticed irregularities in the prescription. The amount of the requested medication was more than double the amount usually prescribed. A clinic far from the pharmacy wrote the prescription. Brooke Forest had not purchased drugs at the pharmacy before. Fudcaz shared his concerns with Seyom (Sam) Woldegerbriel, the pharmacist in the drug store. Fudcaz unsuccessfully called the prescribing clinic to confirm the issuance of the prescription. Woldegerbriel reported the suspicious prescription to the police.

Cle Elum Police Officers Brad Helgeson and Nick Burson responded to the call. They spoke with Sam Woldegerbriel, who described Michael Forest as an older black male wearing a green shirt, a stocking hat, and glasses.

Officer Brad Helgeson scrutinized the parking lot and located a man matching the description given by Sam Woldegerbriel. Helgeson approached the man, Michael Forest, and questioned him about the prescription. Forest first explained he took a Greyhound bus from Seattle and wanted to fill the prescription for his sister. Helgeson informed Forest that Greyhound busses do not stop in Cle Elum and asked Forest for his sister's address. Forest could not provide an address. Forest next expounded that a female in Seattle, from whom he had previously bought cocaine, offered to give him either cash or

more cocaine if he filled the prescription. Forest added that a man gave him a ride to Cle Elum.

Officer Brad Helgeson arrested Michael Forest. When searching Forest incident to the arrest, Helgeson seized a gray vial from Forest's pocket. Forest volunteered that the vial contained two rocks of cocaine and that he had used cocaine within the last hour. Forest also informed Helgeson that he had not slept for five days.

During trial, Officer Brad Helgeson testified:

> Q  And in the report, you indicated what you—how Mr. Forest appeared to you.  How did he appear to you?
> A  As far as a description or as far as his behavior?
> Q  Behavior.
> A  So, he appeared to be under the influence.
> Q  Okay.  And in fact, he advised that he used cocaine within the last hour and not slept for five days, right?
> A  Correct.
> Q  Okay.  So, when he was talking to you, he had not slept for five days.
> A  That's his statement.
> Q  Yes.  And that could lend to some, you know, issues with, I mean you're a trained officer, right?
> A  Correct.
> Q  So, you know that being under the influence can lead to memory issues?
> A  Sure.
> Q  Or recollection?
> A  Sure.

Report of Proceedings at 63.

PROCEDURE

The State of Washington charged Michael Forest with one count of obtaining a controlled substance by fraud or forged prescription. The controlling statute prohibits one from knowingly or intentionally obtaining or attempting to obtain a controlled substance by fraud, deceit, misrepresentation, subterfuge, forgery, or use of a false name. RCW 69.50.403(1)(c).

Jury instruction 8 instructed the jury:

> To convict the defendant of the crime of Obtaining a Controlled Substance by Fraud or Forged Prescription, each of the following elements must be proved beyond a reasonable doubt
> (1)  That on or about June 13, 2020, the Defendant acted knowingly and intentionally, and
> (2)  That the defendant *attempted* to obtain a controlled substance either by
> (a)  Fraud, deceit, misrepresentation, or subterfuge,
> (b)  By forgery or alteration of a prescription, OR
> (3)  That the defendant did make or utter any false or forged prescription, and
> (4)  That any of these acts occurred in the State of Washington.

Clerk's Papers at 28 (emphasis added). The trial court separately defined the words: "knowingly," "intentionally," "deceit," "forgery," and "utter." Michael Forest did not request and the trial court delivered no jury instruction that defined the word "attempt" found in jury instruction 8 and in RCW 69.50.403(1)(c). Forest sought no voluntary intoxication jury instruction.

The jury found Michael Forest guilty of the one charge.

4

LAW AND ANALYSIS

On appeal, Michael Forest challenges the adequacy of his legal representation because his counsel failed to request a jury instruction that defined the word "attempt" and an instruction that presented to the jury the defense of voluntary intoxication. The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).

Washington courts employ the two-part test adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) to analyze claims of ineffective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457 (2017). Under *Strickland*, the defendant must show both (1) deficient performance and (2) resulting prejudice to prevail on an ineffective assistance claim. *State v. Estes*, 188 Wn.2d 450, 457-58 (2017). Deficient performance is performance falling below an objective standard of reasonableness based on consideration of all the circumstances. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

When claiming ineffective assistance of counsel based on defense counsel's failure to request a specific jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice. *State v. Thompson*, 169 Wn. App. 436,

495, 290 P.3d 996 (2012); *State v. Classen*, 4 Wn. App. 2d 520, 540, 422 P.3d 489 (2018). We analyze separately whether Michael Forest was entitled to either an instruction defining "attempt" or a voluntary intoxication jury instruction. We conclude the facts and the law supported neither instruction.

In addition to arguing that his counsel performed ineffectively by failing to seek a jury instruction defining the word "attempt," Michael Forest contends the trial court's failure to deliver such an instruction violated due process because, without the definition, the instructions failed to inform the jury of all of the elements of the crime of fraudulently attempting to procure a prescription drug. We analyze this distinct argument when examining Forest's entitlement to a jury instruction defining "attempt."

Definition of Attempt

Michael Forest asserts that the trial court should have defined the word "attempt" in a jury instruction. Forest acknowledges that, when it comes to securing a conviction under the controlled substance statute, RCW 69.50.403(1)(c), the specific "attempt" articulated in that statute controls as compared to the general "attempt" defined in Washington's general attempt statute, RCW 9A.28.020. Forest nevertheless maintains that RCW 9A.28.020's definition of general "attempt" is an essential element of RCW 69.50.403(1)(c). Forest thereby contends that the trial court should have informed the jury that the State must have proved the two essential elements to succeed on an

6

"attempt" to commit a crime under RCW 9A.28.020: (1) intent to commit a specific

crime and (2) any act constituting a substantial step toward the commission of that crime.

A jury instruction must correctly state the law, not mislead the jury, and permit

counsel to argue his or her theory of the case. *State v. Mark*, 94 Wn.2d 520, 526, 618

P.2d 73 (1980); *State v. Brooks*, 142 Wn. App. 842, 847, 176 P.3d 549 (2008). To

comply with the requirements of due process, the State must prove all facts necessary to

support the elements of the crime(s) charged. *State v. Brooks*, 142 Wn. App. 842, 847

(2008).

Michael Forest's argument conflates two distinct statutes that contain the word

"attempt." First, RCW 9A.28.020(1) operates as Washington's general criminal attempt

statute. The statute reads:

> A person is guilty of an attempt to commit a crime if, with intent to
> commit a specific crime, he or she does any act which is a substantial step
> toward the commission of that crime.

As the general, catch-all attempt statute, RCW 9A.28.020 permits punishment of

anticipatory offenses, thereby allowing the State to charge a defendant with an attempt to

commit any Washington crime. *State v. Austin*, 105 Wn.2d 511, 514, 716 P.2d 875

(1986); *State v. Gjertson*, 71 Wn.2d 757, 759, 430 P.2d 972 (1967) (citing predecessor

statute). The general attempt statute does not apply when a specific criminal statute

includes "attempt" within its own definition of a crime. *State v. Austin*, 105 Wn.2d 511,

7

514-15 (1986). Under such a specific statute, the attempt forms a completed, not an anticipatory crime.

Second, RCW 69.50.403(1) declares:

> It is unlawful for any person knowingly or intentionally:
> . . . .
> (c) To obtain or *attempt* to obtain a controlled substance, or procure or attempt to procure the administration of a controlled substance, (i) by fraud, deceit, misrepresentation, or subterfuge; or (ii) by forgery or alteration of a prescription or any written order; or (iii) by the concealment of material fact; or (iv) by the use of a false name or the giving of a false address.

(Emphasis added.) RCW 69.50.403(1)(c) is one such specific criminal attempt crime.

RCW 69.50.403(1)(c) earmarks an attempt to obtain a controlled substance as an included and completed crime. Therefore, the general attempt statute, RCW 9A.28.020, does not apply and the trial court was not required to inform the jury of its elements.

Michael Forest cites *State v. Jackson*, 62 Wn. App. 53, 813 P.2d 156 (1991), wherein this court held that the failure to define "attempt" as intent to commit the crime and a substantial step toward committing the crime violated the accused's due process rights because the jury instructions failed to inform the jury of all of the elements of the crime. The State charged Jackson with attempt to rape and employed RCW 9A.28.020, the general attempt statute, in addition to the second degree rape statute, RCW 9A.44.050. The Supreme Court reasoned that the definition of "attempt" under RCW 9A.28.020 differs from the common understanding of the word. Jurors of

8

ordinary intelligence would not have known that the general attempt statute imposes a two-element test requiring findings that (1) a defendant intended to commit a specific crime and (2) the defendant took a substantial step toward the commission of that crime.

*State v. Jackson* does not control this case because Michael Forest was not charged under the general attempt statute, RCW 9A.28.020, but under RCW 69.50.403, which designates an attempt to fraudulently obtain a prescription drug as a completed crime. Neither RCW 69.50.403 nor another statute defines "attempt" for purposes of the crime. Forest does not contend that, assuming the two-part test found in RCW 9A.28.020 does not apply, the trial court needed to define "attempt."

Whether the words used in an instruction require further definition is a matter of judgment to be exercised by the trial court. *State v. O'Donnell*, 142 Wn. App. 314, 325, 174 P.3d 1205 (2007). Trial courts must define technical words and expressions used in jury instructions, but need not define words and expressions that are of ordinary understanding or self-explanatory. *State v. Brown*, 132 Wn.2d 529, 611-12, 940 P.2d 546 (1997); *State v. Stacy*, 181 Wn. App. 553, 572, 326 P.3d 136 (2014). The word "attempt" in the specific criminal statute outlawing an "attempt to obtain a controlled substance" assumed its ordinary meaning, which did not necessarily entail a substantial step. *State v. Shipp*, 93 Wn.2d 510, 515-16, 610 P.2d 1322 (1980). The trial court did not err in refusing to define the term.

9

*State v. Austin*, 105 Wn.2d 511 (1986) is illustrative. The State convicted Colleen

Austin of an earlier version of the crime charged Michael Forest. Former RCW

69.50.403(a)(3) (1993), *recodified at* RCW 69.50.403(1)(c). Austin argued to the

Washington Supreme Court that, because the State charged her with an attempted

violation of the controlled substance statute, she should have been sentenced for an

attempt offense under the general attempt statute, which would have afforded a lower

sentence. The Supreme Court disagreed. By the language of the statute, the legislature

intended to render an attempt to fraudulently obtain a prescription drug as serious as

completing the crime.

Voluntary Intoxication

We move to Michael Forest's second desired jury instruction never requested at

trial. A Washington statute, RCW 9A.16.090, creates an intoxication defense. The

statute declares:

> No act committed by a person while in a state of voluntary
> intoxication shall be deemed less criminal by reason of his or her condition,
> but whenever the actual existence of any particular mental state is a
> necessary element to constitute a particular species or degree of crime, the
> fact of his or her intoxication may be taken into consideration in
> determining such mental state.

RCW 9A.16.090 recognizes that, whenever a crime has a particular mental state,

the jury may consider voluntary intoxication when deciding whether the accused formed

that mental state. *State v. Walters*, 162 Wn. App. 74, 81, 255 P.3d 835 (2011). An

accused requesting a voluntary intoxication jury instruction must satisfy three elements: (1) one of the elements of the crime charged possesses a particular mental state, (2) substantial evidence supports a finding that the defendant ingested an intoxicant, and (3) evidence supports a finding that ingestion of an intoxicant affected his ability to acquire the required mental state for the crime. *State v. Classen*, 4 Wn. App. 2d 520, 536 (2018); *State v. Harris*, 122 Wn. App. 547, 552, 90 P.3d 1133 (2004), *aff'd*, Nos. 32924-7-II, 32930-1-II (Wash. Ct. App. Oct. 31, 2006).

Michael Forest satisfied the first element. The statute of conviction, RCW 69.50.403(1)(c) and (e), requires that the State prove he acted "knowingly or intentionally" to secure a conviction.

Michael Forest argues that he satisfied the second element because substantial evidence supports that he ingested cocaine in the relevant time preceding his attempting to procure the prescription drug. We agree.

To satisfy the third element, Michael Forest relies heavily on testimony provided by Officer Brad Helgeson to support the argument he was under the influence of cocaine. Helgeson testified that Forest appeared to be under the influence. While this evidence may suffice as substantial evidence of intoxication, insufficient evidence established that Forest's intoxication impacted his ability to form the intent required to commit the offense at the time he chose to do so. Intoxication alone does not satisfy the third element.

To satisfy the third element, the accused must present substantial evidence of the effects of the intoxicants on his mind or body. *State v. Gabryschak*, 83 Wn. App. 249, 253, 921 P.2d 549 (1996). The evidence must reasonably and logically connect a defendant's intoxication with his inability to form the requisite mental state. *State v. Classen*, 4 Wn. App. 2d 520, 536 (2018). A person can be intoxicated and still be able to form the requisite mental state to commit certain crimes. *State v. Classen*, 4 Wn. App. 2d 520, 537 (2018).

The law distinguishes between intoxication resulting from alcohol and intoxication stemming from a controlled substance. The accused need not present expert testimony to support an involuntary intoxication defense based on alcohol intoxication. *State v. Classen*, 4 Wn. App. 2d 520, 537 (2018); *State v. Thomas*, 123 Wn. App. 771, 782, 98 P.3d 1258 (2004). The law recognizes that the effects of alcohol are commonly known and jurors can draw reasonable inferences from testimony about alcohol use. *State v. Classen*, 4 Wn. App. 2d 520, 537 (2018). The case law does not read the same about methamphetamine or heroin intoxication. *State v. Classen*, 4 Wn. App. 2d 520, 537 (2018). The accused must present competent evidence that methamphetamine or heroin precluded his ability to form the requisite mental state required to convict. *State v. Classen*, 4 Wn. App. 2d 520, 537 (2018).

Michael Forest cites *State v. Walters*, 162 Wn. App. 74 (2011) to support the availability of a voluntary intoxication instruction. We deem *Walters* inapposite because

12

defendant James Walters sought a voluntary intoxication jury instruction based on alcohol consumption.

We deem *State v. Classen*, 4 Wn. App. 2d 520 (2018) helpful. Darrell Classen, who admitted to using methamphetamine and heroin daily, argued that he received ineffective assistance of counsel due to defense counsel's failure to request a voluntary intoxication instruction. This court analyzed this issue under the required three prong test. We concluded that, even assuming substantial evidence of intoxication existed, insufficient evidence created a jury question of whether intoxication affected Classen's ability to form the required mental state to commit the crimes. A law enforcement officer testified that Classen appeared to be under the influence, but the officer did not testify as to what type of drug or intoxicant he suspected Classen ingested. The officer did not testify as to whether methamphetamine or heroin affected a person's ability to form the requisite intent to commit the crimes of kidnapping or assault. Because it is not common knowledge that methamphetamine or heroin affects a person's ability to form the requisite intent, Classen needed to provide competent evidence to show an inability to form intent. Classen failed to introduce any such evidence.

Michael Forest's arresting officer, Officer Brad Helgeson, testified that Forest appeared to be under the influence at the time he was arrested. Helgeson testified that Forest had told him that the former used cocaine and was sleep deprived. Nevertheless, Helgeson provided no testimony on the effects of cocaine on its user. Helgeson averred

13

that cocaine can impact one's memory, but he did not declare that Forest was under a state of intoxication that would impede his memory. More importantly, Officer Helgeson did not testify to observing any behavior of Forest that evidenced an inability to intentionally or knowingly procure a prescription drug under false pretenses. The common layperson does not know the impact of cocaine on one's ability to knowingly or intentionally perform criminal acts.

When arguing entitlement to a voluntary intoxication instruction, Michael Forest emphasizes that he had not slept for five days. To the extent his lack of sleep relates to his ingestion of cocaine, we agree the evidence helps Forest. But, Forest also contends that lack of sleep deprivation impacts a person similarly to alcohol intoxication. Forest cites a Centers for Disease Control and Protection article to support this theory. NIOSH Training for Nurses on Shift Work and Long Work Hours, Centers for Disease Control and Prevention (last edited March 31, 2020), https://www.cdc.gov/niosh/work-hour  training-for-nurses/longhours/mod3/08.html. We deem the argument harmful to Forest, because, if sleep deprivation led to his criminal conduct, RCW 9A.16.090 creates no defense for sleep deprivation.

## CONCLUSION

We reject Michael Forest's assignments of error and affirm his conviction for attempting to gain a controlled substance through a fraudulent prescription.

14

No. 39080-2-III
*State v. Forest*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J. *

_____
Staab, J.

---

* Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.