[No. 14325-2-III.   Division Three.   July 11, 1995.]

THE STATE OF WASHINGTON, *Appellant*, v. BRUCE ALLEN FITCH, *Respondent*.

*Kevin M. Korsmo, Deputy Prosecuting Attorney,* for appellant.

*Maryann C. Moreno,* for respondent.

SWEENEY, J. — Bruce Fitch pleaded guilty to one count of delivery of cocaine and two counts of delivery of marijuana. The sentencing court imposed an exceptional sentence below the standard range relying on RCW 9.94A.390(1)(g) and *State v. Sanchez,* 69 Wn. App. 255, 848 P.2d 208, *review denied,* 122 Wn.2d 1007 (1993). The State appeals, contending that the decision in *Sanchez* conflicts

with the legislative intent of the Omnibus Alcohol and Controlled Substances Act (OACS), Laws of 1989, ch. 271, or alternatively, that the differences among the multiple drug buys were not "nonexistent, trivial or trifling". We adopt the rationale of *Sanchez* and affirm Fitch's exceptional sentence.

### FACTS AND PROCEDURAL BACKGROUND

On January 4, 1991, an undercover officer and a confidential informant bought two grams of marijuana from Fitch at his house. Later the same day, they returned and bought a gram of cocaine. Four days later they returned and bought a "bud" of marijuana and a gram of cocaine.

Fitch was charged with two counts of delivery of cocaine, two counts of delivery of marijuana and one count of conspiracy. He pleaded guilty to the two counts of delivery of marijuana (RCW 69.50.401(a)(1)(ii)) and one count of delivery of cocaine (RCW 69.50.401(a)(1)(i)). The State dismissed the other charges. Fitch failed to appear for his presentence interview and a bench warrant was issued. He was apprehended over a year later.

On December 2, 1993, Fitch was sentenced. He requested an exceptional sentence downward. Although he had no prior convictions, the standard range for his cocaine conviction was 67 to 89 months because of the other two current offenses. RCW 9.94A.310(1); .360(13); .400(1)(a).[1] Based on RCW 9.94A.390(1)(g) (multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter) and *Sanchez* (applying RCW 9.94A.390(1)(g) to impose an exceptional sentence downward), the sentencing court

---

[1]RCW 9.94A.360(13) provides that "[i]f the present conviction is for a drug offense count three points for each adult prior felony drug offense conviction and two points for each juvenile drug offense". Each of Fitch's three current convictions were for adult felony drug offenses.

RCW 9.94A.400(1)(a) provides, in part, that "[e]xcept as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score". Accordingly, Fitch's offender score was six.

imposed an exceptional sentence of 21 months for each count, to run concurrently. The State sought direct review of the exceptional sentence with the Washington State Supreme Court. On September 7, 1994, the Supreme Court transferred the case to this court for resolution.

## DISCUSSION

■ We review a sentence below the standard range to determine whether (1) the reasons supplied by the sentencing judge are not supported by the record, (2) the reasons do not justify a sentence below the standard range for that offense, or (3) the sentence is clearly too lenient. RCW 9.94A.210(4); *State v. Alexander*, 125 Wn.2d 717, 722 n.9, 731, 888 P.2d 1169 (1995); *Sanchez*, 69 Wn. App. at 258; *State v. Moore*, 73 Wn. App. 789, 794-95, 871 P.2d 642 (1994). The State does not challenge the factual basis for the findings by the sentencing court here and we therefore accept them as verities on appeal. *State v. Gentry*, 125 Wn.2d 570, 605, 888 P.2d 1105 (1995).

■ We next determine "whether the reasons for the exceptional sentence are justified as a matter of law". *Moore*, 73 Wn. App. at 794-95 (citing *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991)). To do so we must determine whether the reasons supplied by the sentencing court were sufficiently "substantial and compelling", considering the purposes of the Sentencing Reform Act of 1981 (SRA),[2] and whether they duplicate factors already considered by

---

[2]The purpose of the SRA is defined in RCW 9.94A.010 as follows:

"The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which *structures, but does not eliminate, discretionary decisions* affecting sentences, and to add a new chapter to Title 9 RCW designed to:

"(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

"(2) Promote respect for the law by providing punishment which is just;

"(3) Be commensurate with the punishment imposed on others committing similar offenses;

"(4) Protect the public;

"(5) Offer the offender an opportunity to improve him or herself; and

"(6) Make frugal use of the state's resources". (Italics ours.)

the Legislature in computing the standard range. RCW 9.94A.120(2); *Alexander*, 125 Wn.2d at 725; *Moore*, 73 Wn. App. at 795; *Sanchez*, 69 Wn. App. at 259.

The SRA grants to a sentencing court discretion to impose a sentence below the standard range if the sentence range obtained by use of the other current offenses is "clearly excessive". RCW 9.94A.390(1)(g). In *Sanchez*, the trial court found that the differences among the three cocaine charges were trivial or trifling and imposed a sentence below the standard range. There, police controlled the number of drug deliveries. And all three deliveries were of small amounts of drugs, to the same person, over a brief period of time. *Sanchez*, 69 Wn. App. at 260-61. Division Two of this court held that even though all three convictions must be factored into the offender score to determine the standard sentencing range, a sentencing court still has the discretion to determine whether the resulting standard range is "clearly excessive" in light of the purposes of the SRA. *Sanchez*, 69 Wn. App. at 262.

The State argues that the holding in *Sanchez* frustrates the legislative intent of the OACS. We are not persuaded. One purpose of the OACS was to increase the effectiveness of drug offense prosecution. *See State v. Jenkins*, 68 Wn. App. 897, 901, 847 P.2d 488, *review denied*, 121 Wn.2d 1032 (1993). Toward that end, it changed both the sentencing grid and the table of offenses within each seriousness level, and increased the number of points for each drug offense from two to three. *See, e.g.*, RCW 9.94A.310; .320; .360(13); *State v. Silva-Baltazar*, 125 Wn.2d 472, 479, 886 P.2d 138 (1994). But nothing in the OACS supersedes the authority granted a sentencing court by the SRA to impose a sentence above or below the standard range. RCW 9.94A.390(1)(g); .390(2)(g). After all, the purpose of the SRA was to "structure", *not eliminate*, discretion in sentencing decisions. RCW 9.94A.010. The sentencing court here properly calculated Fitch's offender score based on the directives of the OACS and it appropriately exercised its legislative grant of discretion to

adjust the resulting sentencing range downward when it found the range "clearly excessive". RCW 9.94A.390(1)(g); *Sanchez*, 69 Wn. App. at 262.

The State next argues that the specific drug trafficking provisions of the OACS supersede the general nondrug sentencing statutes of the SRA. It relies on *State v. Roby*, 67 Wn. App. 741, 840 P.2d 218 (1992). *Roby* is distinguishable. There, the court grappled with two overlapping statutes, the general attempt statute and another specifically related to attempts in drug-related crimes. Relying on *State v. Austin*, 39 Wn. App. 109, 112, 692 P.2d 206 (1984), *aff'd*, 105 Wn.2d 511, 716 P.2d 875 (1986), the court in *Roby* held that when both "a general and a specific statute proscribe identical conduct under identical circumstances", the prosecutor must charge under the specific statute. *Roby*, 67 Wn. App. at 747-48. But here each statute related to a different stage in the sentencing proceedings. The sentencing court had to first calculate the standard range. It then had to determine whether the multiple offense policy resulted in a standard range sentence that was "clearly excessive".

The court's reasons for imposing an exceptional sentence downward here parallel those in *Sanchez* and *State v. Hortman*, 76 Wn. App. 454, 886 P.2d 234 (1994), *review denied*, 126 Wn.2d 1025 (1995). As we have noted, all three drug deliveries were controlled by the police. All involved small quantities of drugs delivered to the same person. The court also found that the drug actually targeted by the investigation was cocaine, not marijuana. These findings amply support the court's conclusion that the difference between the three buys was nonexistent, trivial or trifling. *See Hortman*, 76 Wn. App. at 458 (purchases solicited by the police, deliveries all at the same location within a brief period of time, small amounts of cocaine); *Sanchez*, 69 Wn. App. at 261 (drug buys initiated and controlled by the police, all involved the same buyer and seller, and all involved small amounts of cocaine).

The State next argues that *Sanchez* is founded on the

assumption that multiple drug transactions are made to increase an offender's score. That assumption, the argument continues, is wrong. Both the *Hortman* and *Sanchez* courts suggested that subsequent buys probably had little purpose other than to increase the defendant's offender score. *Hortman*, 76 Wn. App. at 458; *Sanchez*, 69 Wn. App. at 261. But each decision also rejects the inference that the exceptional sentence was imposed as a sanction for police practices. The opinions focus instead on the difference "between the effects of the first controlled buy and the cumulative effects of subsequent controlled buys". *Hortman*, 76 Wn. App. at 460-61; *Sanchez*, 69 Wn. App. at 261.

■ The State urges that a court's decision that the presumptive sentence is clearly excessive is a subjective determination which encroaches on the powers of the Legislature. It is not. This exercise of discretion is authorized by the Legislature "based on the Legislature's own stated purposes for the [SRA]". *Hortman*, 76 Wn. App. at 463.

■ The State contends this exercise of discretion will result in different sentences for similar offenses. Without this legislative grant of judicial discretion, just the opposite is possible. Certainly none of the purposes of the SRA are served by the multiple offense policy of RCW 9.94A.400 if qualitative differences between the first criminal act and subsequent acts must be ignored. *Hortman*, 76 Wn. App. at 464. And, more significantly, "[i]mposing a penalty which is within the standard range but unduly harsh, considering the circumstances of a case, does not 'promote respect for the law by providing punishment which is just'. RCW 9.94A.010(2)". *State v. Nelson*, 108 Wn.2d 491, 502, 740 P.2d 835 (1987), *quoted in Moore*, 73 Wn. App. at 800.

■ The State next argues that the multiple buys further legitimate police objectives which again distinguish this case from *Sanchez*. For example, the State says that it is frequently necessary to make two buys to make one stand up in court because of the potential for the entrapment defense. Accepting that assertion at face value, the police objective—conviction for one buy—is furthered by

sentencing for one offense rather than two since a conviction on the one was the police objective anyway. But again the subjective police purpose for subsequent buys does not control sentencing discretion. The question facing a sentencing court is whether the multiple offense policy results in a sentence which is clearly excessive, not the police rationale for charging multiple offenses in the first place. *Hortman*, 76 Wn. App. at 463. The court's exercise of the "structured discretion" of RCW 9.94A.390(1)(g) here was reasonable. *Hortman*, 76 Wn. App. at 460.

Finally, the State fails to satisfy the third prong of the test: a showing that the court abused its discretion by imposing a sentence which was "clearly too lenient". RCW 9.94A.210(4)(b). A sentence is clearly too lenient if the trial court abused its discretion in establishing the sentence's precise length. *Alexander*, 125 Wn.2d at 731. Delivery of cocaine is a Level VIII offense. RCW 9.94A.320. With no prior or current offenses, the standard range sentence is 21 to 27 months. RCW 9.94A.310. The trial judge's imposition of a sentence of 21 months is within the standard range for a single cocaine offense and is not clearly too lenient. *See Alexander*, 125 Wn.2d at 732-33.

Affirmed.

THOMPSON, C.J., and MUNSON, J., concur.